UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE

| | |
|---|---|
| GEORGE SCHWARZ, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>NISSAN NORTH AMERICA, INC.,<br><br>Defendant. | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff George Schwarz ("Plaintiff"), individually and on behalf of all others similarly situated, upon personal knowledge of facts pertaining to him and on information and belief as to all other matters, by and through undersigned counsel, hereby brings this Class Action Complaint against Defendant Nissan North America, Inc. (collectively, "Defendant" or "Nissan").

## NATURE OF THE ACTION

1. Plaintiff brings this action on behalf of himself and on behalf of all similarly situated persons ("Class Members") in the United States who purchased or leased any of the following Nissan and Infiniti branded vehicles which were manufactured with a 3G modem, an obsolete piece of telematics equipment for the indicated model years: LEAF model years 2016-2017, Altima model years 2016-2017, GT-R model years 2017-2018, Maxima model years 2016-2017, Murano model year 2017, Pathfinder model year 2017, Rogue model years 2016-2017, Rogue Sport model years 2017-2018, Sentra model years 2016-2018, TITAN model years 2016-2017, TITAN XD model year 2017, Infiniti Q50 model years 2014–2018, Infiniti Q60 model years 2017–2018, Infiniti Q70 model years 2013–2018, Infiniti QX30 model years 2017–2019, Infiniti JX model years 2013–2017, Infiniti QX60 2013–2017,

Infiniti QX56 model years 2013–2017, and Infiniti QX80 model years 2013–2017 (the "Class Vehicles").

2. This action is brought to remedy violations of law in connection with Defendant's manufacture, marketing, advertising, selling, warranting, and servicing of the Class Vehicles. The Class Vehicles' internet enabled features, such as stolen vehicle locator, remote lights, remote vehicle unlocking, the ability to trigger the horn, and automatic crash notification and other features available through the NissanConnect Services, NissanConnect EV, Infiniti InTouch Services and Infiniti Connection.

3. NissanConnect Services, NissanConnect EV, Infiniti InTouch Services or Infiniti Connection, were rendered inoperable after AT&T's 3G phase out in 2022 due to Nissan's installation of obsolete telematics equipment in the Class Vehicles. The allegations herein are based on personal knowledge as to Plaintiff's own experiences and are made as to other matters based on an investigation by counsel, including analysis of publicly available information.

## JURISDICTION AND VENUE

4. The Court has subject matter jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1332(d), because this matter was brought as a class action under Fed. R. Civ. P. 23, at least one proposed Class member is of diverse citizenship from Defendant, the proposed Class includes more than 100 members, and the aggregate amount in controversy exceeds five million dollars ($5,000,000), excluding interest and costs.

5. The Court has personal jurisdiction over Defendant and venue is proper pursuant to 28 U.S.C. § 1391, because a substantial part of the events and omissions giving rise to Plaintiff's claims occurred within this District. Defendant Nissan North America, Inc. has its headquarters and principal place of business in this District, is

authorized to do business in this District, and regularly conducts business in this District.

## PARTIES

6. Plaintiff George Schwarz is an adult citizen of Wantagh, New York. On or about April 28, 2016, Plaintiff purchased a new 2016 Nissan Maxima Platinum from Legacy Nissan, an authorized Nissan dealership in Westbury, New York. On or about November 3, 2017, Plaintiff purchased a new 2017 Nissan Murano Platinum from Nissan 112 in Patchogue, New York. Plaintiff's vehicles came with a 3 year/36,000-mile New Vehicle Limited Warranty.

7. Nissan's warranty or owner's manual for the vehicles makes no mention of the fact that Nissan installed an inferior 3G modem in them. At the time of his vehicle purchases, Plaintiff was not informed by Nissan that the modems in his vehicles were 3G modems. The 3G modems were not disclosed by Nissan's authorized dealerships, on the vehicle's window sticker, or elsewhere at the time Plaintiff purchased the vehicles.

8. In or around March 2022, Plaintiff noticed that his NissanConnect Services were not working. Upon startup, his vehicles' consoles showed a screen asking him if he would like to connect to NissanConnect. Even when he selects "yes," the car icon in the upper right-hand corner of the telematics screen has a red line crossing across, indicating a lack of data connection. Shortly thereafter he called Nissan to determine what the issue was. Plaintiff estimates he called Nissan's various customer service and customer care numbers, in total, more than twenty times. After much effort, Plaintiff finally received a response from Nissan by email stating that there was no effort underway to fix the problem, and that he was on his own.

9. Plaintiff is still unable to use NissanConnect Services and still encounters the same error screen upon startup.

- 3 -
CLASS ACTION COMPLAINT

Case 3:22-cv-00933     Document 1     Filed 11/16/22     Page 3 of 19 PageID #: 3

10. Defendant Nissan North America, Inc. is a Delaware limited liability company with its principal place of business located in Franklin, Tennessee. Defendant designed, manufactured, marketed, distributed, leased, and sold, through its authorized dealers and distributors, the Class Vehicles in the United States to Plaintiff and the other Class members.

## FACTUAL BACKGROUND

11. The remote features of the Class Vehicles accessed through NissanConnect Services, NissanConnect EV, Infiniti InTouch Services or Infiniti Connection ("Remote Services") use the vehicle's onboard wireless module, or modem, to communicate with the secure Nissan cloud service through cellular technology. The Remote Services provide a variety of safety and convenience features.

12. For example, the E-call (SOS) system switch used in combination with the NissanConnect Services allows an owner to call for assistance in case of an emergency. By pushing the switch, drivers can reach a response specialist that can provide assistance based on the situation described by the vehicle's occupant, including dispatching response services or providing roadside assistance. Response specialists can also be contacted outside the vehicle to assist in locating it in the event that it is stolen.

13. Vehicle tracking is also available through the Remote Services for those vehicle owners who, for instance, share their vehicle with a teenage driver. Owners can activate curfew, max speed and boundary alerts and get notifications from Nissan if the limits that are set are exceeded. Maintenance alert will also inform owners if a malfunction indicator light is triggered on their vehicle.

14. Further security features available through the Remote Services' companion allow vehicle owners to lock or unlock their vehicle, trigger the horn and

lights, and warm up or cool down the vehicle from a distance without even using the key.

15. Nissan contracted with AT&T to provide access to its 3G network for the modems installed in the Class Vehicles. As mobile carriers seek to upgrade their networks to use the latest technologies, they periodically shut down older outdated services, such as 3G, to free up spectrum and infrastructure to support new services, such as 5G. Similar transitions have happened before. For example, some mobile carriers shut down their 2G networks when they upgraded their networks to support 4G services. Mobile carriers have the flexibility to choose the types of technologies and services they deploy, including when they decommission older services in favor of newer services to meet consumer demands.

16. AT&T first introduced 3G in 2006-2007.[1] This was followed by the launch of its 4G LTE service on September 18, 2011.[2] Then, in February 2019, AT&T publicly announced a plan to sunset their 3G wireless network in order to make way for its deployment of its 5G network.[3]

17. Despite the inevitability of AT&T's decommissioning of its 3G network, and the public announcement of the timetable in February 2019, Nissan continued to manufacture the Class Vehicles with a 3G modem. Accordingly, Nissan knew or should have known when it manufactured each of the Class Vehicles, that AT&T would decommission its 3G network before the end of the usable life of the Class Vehicle and/or while the Class Vehicles were still under warranty.

---

[1] Sascha Segan, *The 3G Shutdown: How Will It Affect Your Cell Phone?*, PC Magazine (Nov. 14, 2022), https://www.pcmag.com/how-to/the-3g-shutdown-how-will-it-affect-your-phone.
[2] Jessica Dolcourt, *AT&T launching LTE on Sept. 18, at long last,* CNET (Nov. 14, 2022), https://www.cnet.com/tech/mobile/at-t-launching-lte-on-sept-18-at-long-last/.
[3] *When it comes to transitioning your network and devices, we're here to help*, AT&T (Nov. 14, 2022), https://www.business.att.com/explore/make-the-switch.html.

18. Nissan refused to offer any repair or upgrade of the 3G modem as a warranty repair. As a result of Nissan's misconduct, Plaintiff and the other Class members were each injured on account of receiving Class Vehicles that were fundamentally different from what they believed they were purchasing, less valuable than was represented, and less valuable than what they actually received.

19. To date, Plaintiff and Class members have not obtained an adequate repair for the non-functional 3G modem, and they do not know whether Defendant is capable of providing a repair for the non-functional 3G modem. As such, and without the benefit of discovery, it is for all practical purposes impossible to know at this time whether a remedy at law or in equity will provide the appropriate full relief for Plaintiff and members of the Class. As a result, Plaintiff, at this stage of the litigation, seeks both restitution and a remedy at law, where the claims so permit. Further, Plaintiff seeks an injunction enjoining Defendant and its agents, servants, and employees, and all persons acting under, in concert with, or for it from selling Class Vehicles without notice that they have a non-functional 3G modem which must be replaced or repaired.

## **TOLLING OF STATUTES OF LIMITATIONS**

20. Defendant had exclusive knowledge of the defective nature of the Class Vehicles' 3G modems, i.e. that they would cease operating when AT&T's 3G network was decommissioned, and knew the defective nature would not be discovered by Plaintiff and Class Members unless and until the defect manifested. Only Defendant had access to information about the defect, through internal pre-sale testing procedures customarily conducted by Nissan, communications with AT&T regarding the eventual decommissioning of its 3G network, and Nissan's general knowledge of the telecommunications industry's upgrade to 4G and 5G technology.

21. Since the defect could not be detected until it manifested itself when the AT&T network was decommissioned, Plaintiff and Class Members exercising due diligence were not reasonably able to discover the defect until after purchasing the Class Vehicles. Plaintiff and Class Members could not reasonably have been expected to learn of or discover Defendant's omissions of material information concerning the Class Vehicles until after manifestation of the Defect and only then because they would be forced to research what had happened to their Vehicles. Therefore, the discovery rule applies to all claims asserted by Plaintiff and Class Members.

22. Defendant has known about the defect since at least 2019 when AT&T made its announcement of the decommissioning of its 3G network, if not earlier, and has failed to alert Class Members to the defect.

23. Thus, any applicable statute of limitations has been tolled by Defendant's actions and Defendant is estopped from pleading the statute of limitations because it failed to disclose facts it was obligated to disclose concerning the defect.

## CLASS ALLEGATIONS

24. This action is brought as a class action pursuant to Fed. R. Civ. P. 23(a) (b)(2), and (b)(3) on behalf of a Class defined as follows:

**Nationwide Class**

All persons and entities in the United States that purchased or leased a Class Vehicle for end use and not for resale.

25. In the alternative, Plaintiff seeks certification of the following class:

**New York Class**

All persons and entities in the State of New York that purchased or leased a Class Vehicle for end use and not for resale.

26. Excluded from the Class are: (i) Defendant and its officers and directors,

agents, affiliates, subsidiaries, authorized distributors and dealers, (ii) all Class members who timely and validly request exclusion from the Class, and (iii) the Judge presiding over this action.

27. Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of his claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

28. **Numerosity:** The members of the Class are so numerous that joinder of all Class members in a single proceeding would be impracticable. While the exact number and identities of individual members of the Class are unknown at this time, such information being in the sole possession of Nissan and obtainable by Plaintiff only through the discovery process, Plaintiff believes, and on that basis alleges, that tens of thousands of Class Vehicles have been sold and leased nationwide.

29. **Existence/Predominance of Common Questions of Fact and Law:** Common questions of law and fact exist as to all Class members and predominate over questions affecting only individual Class members. Such common questions of law or fact include, *inter alia*:

    a. whether Nissan engaged in the conduct alleged herein;

    b. whether Nissan omitted and misrepresented material facts to purchasers and lessees of Class Vehicles;

    c. whether Nissan's omissions and misrepresentations regarding the Class Vehicles were likely to mislead a reasonable consumer;

    d. whether Nissan breached warranties with Plaintiff and the other Class members when it produced, distributed, and sold the Class Vehicles;

    e. whether Plaintiff's and the other Class members' Class Vehicles were worth less than as represented as a result of the conduct alleged herein;

    f. whether Plaintiff and the other Class members have been damaged

and, if so, the extent of such damages; and

g. whether Plaintiff and the other Class members are entitled to equitable relief, including but not limited to, restitution and injunctive relief.

30. Nissan engaged in a common course of conduct giving rise to the legal rights sought to be enforced by Plaintiff individually and on behalf of the other Class members. Similar or identical statutory and common law violations, business practices, and injuries are involved. Individual questions, if any, pale by comparison, in both quality and quantity, to the numerous common questions that dominate this action.

31. **Typicality:** Plaintiff's claims are typical of the claims of the other Class members because, among other things, Plaintiff and the other Class members were injured through the substantially uniform misconduct described above. Like Plaintiff, Class members also purchased or leased a Class Vehicle containing the defect. Plaintiff is advancing the same claims and legal theories on behalf of himself and all other Class members, and no defense is available to Nissan that is unique to Plaintiff. The same events giving rise to Plaintiff's claims for relief are identical to those giving rise to the claims of all Class members. Plaintiff and all Class members sustained monetary and economic injuries including, but not limited to, ascertainable losses arising out of Nissan's wrongful conduct in selling/leasing and failing to remedy defective Class Vehicles.

32. **Adequacy:** Plaintiff is an adequate Class representative because he will fairly represent the interests of the Class. Plaintiff has retained counsel with substantial experience in prosecuting consumer class actions, including consumer fraud and automobile defect class action cases. Plaintiff and his counsel are committed to prosecuting this action vigorously on behalf of the Class they represent and have the resources to do so. Neither Plaintiff nor his counsel has interests adverse or

antagonistic to those of the Class.

33. **Superiority:** A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other detriment suffered by Plaintiff and the other Class members are relatively small compared to the burden and expense that would be required to individually litigate their claims against Nissan, so it would be impracticable for Class members to individually seek redress for Nissan's wrongful conduct. Even if Class members could afford individual litigation, the court system should not be required to undertake such an unnecessary burden. Individualized litigation would also create a potential for inconsistent or contradictory judgments and increase the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

34. Upon information and belief, members of the Class can be readily identified and notified based upon, *inter alia*, the records (including databases, e-mails, dealership records and files, etc.) Nissan maintains regarding its sales and leases of Class Vehicles.

## CAUSES OF ACTION
### COUNT I
### Breach of Implied Warranty of Merchantability
### (On Behalf of Plaintiff and the Classes)

35. Plaintiff realleges and incorporates by reference the preceding paragraphs as if fully set forth herein.

36. This claim is brought by Plaintiff on behalf of the Nationwide Class and the New York Class.

37. Defendant is and was at all relevant times a merchant with respect to the Class Vehicles, and manufactured, distributed, warranted and sold the Class Vehicles.

38. A warranty that the Class Vehicles, and their telematics equipment, were in merchantable condition and fit for the ordinary purposes for which they were sold is implied by law.

39. Plaintiff and the other Class members purchased the Class Vehicles manufactured and sold by Defendant in consumer transactions.

40. The Class Vehicles, when sold and at all times thereafter, were not in merchantable condition and the modem was not in merchantable condition and were not fit for the ordinary purpose for which cars with installed telematics equipment are used because the inevitable decommissioning of AT&T's outdated 3G network would render the vehicle modem nonfunctional. The Class Vehicles left Defendant's possession and control with defective modem that rendered them at all times thereafter unmerchantable and unfit for ordinary use. Plaintiff and the other Class members used their Class Vehicles in the normal and ordinary manner for which Class Vehicles were designed and advertised.

41. Defendant knew before the time of sale to Plaintiff and the other Class members, or earlier, that the Class Vehicles were produced with a defective modem that was unfit for ordinary use. This knowledge was based on Defendant's own knowledge of the decommissioning of AT&T's 3G network its modems relied on, its decision to include an alternate 4G modem in other vehicle models produced around the same time, the industry standard practice of making vehicle features that would not be affected by the 3G network shutdown, and Defendant's general knowledge regarding the manufacture of its vehicle modems and integrated systems and software.

42. Despite Plaintiff's and the other Class members' normal, ordinary, and intended uses, maintenance, and upkeep, the modem of the Class Vehicles

experienced and continue to experience the defect and premature failure after AT&T decommissioned its outdated 3G network.

43. Plaintiff's and other Class members' modems and the Class Vehicles are, and at all times were, not of fair or average quality, nor would they pass without objection.

44. All conditions precedent have occurred or been performed.

45. Defendant's warranty disclaimers, exclusions, and limitations, to the extent that they may be argued to apply, were, at the time of sale, and continue to be, unconscionable and unenforceable to disclaim liability for a known, latent defect. Defendant knew when it first made these warranties and their limitations that the defect existed, and the warranties might expire before a reasonable consumer would notice or observe the defect upon AT&T decommissioning its outdated 3G network. Defendant also failed to take necessary actions to adequately disclose or cure the defect after the existence of the defect came to the public's attention and sat on its reasonable opportunity to cure or remedy the defect, its breaches of warranty, and consumers' losses. Under these circumstances, it would be futile to enforce any informal resolution procedures or give Defendant any more time to cure the defect or cure its breaches of warranty.

46. Plaintiff and the other Class members suffered and will suffer diminution in the value of their Class Vehicles, out-of-pocket losses related to repairing, maintaining, and servicing their defective Class Vehicles, costs associated with arranging and obtaining alternative means of transportation, and other incidental and consequential damages recoverable under the law.

47. Plaintiff and the other Class members had sufficient direct dealings with Defendant and its agents (dealers) to establish privity of contract between themselves and Defendant. As alleged *supra,* Plaintiff purchased his Class Vehicle from a Nissan

dealership, an agent of Nissan. Plaintiff's Class Vehicle was purchased with a Nissan New Vehicle Limited Warranty. Defendant and Plaintiff and the other Class members are in privity because of Nissan's New Vehicle Limited Warranty, which Defendant extends to Plaintiff and the other Class members. Privity, nevertheless, is not required in this case because Plaintiff and the other Class members are intended third-party beneficiaries of contracts between Defendant and its dealers; specifically, they are the intended beneficiaries of Defendant's implied warranties. The dealers were not intended to be the ultimate consumers of the Class Vehicles; the warranty agreements were designed for, and intended to benefit, only the ultimate consumers—such as Plaintiff and the other Class members. Indeed, under the terms of the New Vehicle Limited Warranty, "[t]his warranty is provided to the original and subsequent owner(s) of a Nissan vehicle originally distributed by Nissan which is originally sold by a Nissan authorized Nissan dealership in the United States, and which is registered in the U.S. and normally operated in the United States (including Alaska and Hawaii), the United States territories (specifically Guam, Saipan, American Samoa, Puerto Rico and the U.S. Virgin Islands), and Canada."

## COUNT II
### Violation of the New York Deceptive Practices Act
### N.Y. Gen. Bus. Law § 349 ("GBL")
### (On Behalf of Plaintiff and the New York Class)

48. Plaintiff re-alleges and incorporates by reference the preceding paragraphs.

49. This claim is brought by Plaintiff on behalf of the New York Class.

50. Plaintiff and New York Class members are "persons" within the meaning of the GBL. N.Y. Gen. Bus. Law § 349(h).

51. Each Defendant is a "person, firm, corporation or association or agent or employee thereof" within the meaning of the GBL. N.Y. Gen. Bus. Law § 349(b).

- 13 -
CLASS ACTION COMPLAINT

Case 3:22-cv-00933   Document 1   Filed 11/16/22   Page 13 of 19 PageID #: 13

52. Under GBL section 349, "[d]eceptive acts or practices in the conduct of any business, trade or commerce" are unlawful.

53. In the course of Defendant's business, they failed to disclose and actively concealed that Class Vehicles are equipped with 3G compatible modems that would be phased out and "bricked" or rendered useless through 3G decommissioning. Defendant did so with the intent that consumers rely on its misrepresentation and concealment in deciding whether to purchase the Class Vehicles.

54. By intentionally concealing the foregoing, while advertising Class Vehicles 3G network enabled features as functional, premium services and fit for their ordinary and intended purpose, Defendant engaged in deceptive acts or practices in violation of GBL § 349.

55. Defendant's deceptive acts or practices were materially misleading. The conduct was likely to and did deceive reasonable consumers, including Plaintiff, about the true performance and qualities of the Class Vehicles.

56. Plaintiff and New York Class members were unaware of, and lacked a reasonable means of discovering, the material facts that Defendant suppressed. Had Plaintiff and New York Class members known the truth about the Class Vehicles, they would not have purchased them, or would not have paid as much for them as they did.

57. Defendant's actions set forth above occurred in the conduct of trade or commerce.

58. Defendant's misleading conduct concerns widely purchased consumer products and affects the public interest. Defendant's conduct includes unfair and misleading acts or practices that have the capacity to deceive consumers and are harmful to the public at large.

59. Plaintiff and New York Class members suffered ascertainable loss as a direct and proximate result of Defendant's GBL violations. Among other things,

Plaintiff and New York Class members overpaid for the Class Vehicles; suffered diminution of value of their Class Vehicles; have lost use of safety features; and have suffered other injuries. These injuries are the direct and natural consequence of Defendant's material misrepresentations and omissions.

60. Plaintiff, individually and on behalf of the New York Class, requests that this Court enter such orders or judgments as may be necessary to enjoin Defendant from continuing its unfair and deceptive practices.

61. Under the GBL, Plaintiff and New York Class members are entitled to recover their actual damages or $50, whichever is greater. Additionally, because Defendant acted willfully or knowingly, Plaintiff and New York Class members are entitled to recover three times their actual damages. Plaintiff is entitled to reasonable attorneys' fees.

## COUNT III
### Fraudulent Omission
### (On Behalf of Plaintiff and the Classes)

62. Plaintiff incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

63. This claim is brought by Plaintiff on behalf of the Nationwide Class and the New York Class.

64. Defendant knew that the Class Vehicles' modems were defective, would fail, and were not suitable for their intended use, and that the Class Vehicles' defect would lead to the failure of key features like the those accessed through the mobile application.

65. Defendant concealed from and failed to disclose to Plaintiff and Class members the defective nature of Class Vehicles' modem.

66. Defendant was under a duty to Plaintiff and Class members to disclose the defective nature of Class Vehicles' modem because:

- Defendant was in a superior position to know the true state of facts about the defect contained in Class Vehicles' modem;
- Defendant made partial disclosures about the quality of Class Vehicles without revealing the defective nature of the modem; and
- Defendant actively concealed the defective nature of the Class Vehicles' modem from Plaintiff and other Class members.

67. The facts concealed or not disclosed by Defendant to Plaintiff and the other Class members are material in that a reasonable person would have considered them to be important in deciding whether to purchase or lease Defendant's Class Vehicles or pay a lesser price for them. Had Plaintiff and Class members known about the defective nature of Class Vehicles' modem, they would not have purchased or leased Class Vehicles, or would have paid less for them.

68. Defendant concealed or failed to disclose the true nature of the design or manufacturing defects contained in Class Vehicles' modem in order to induce Plaintiff and Class members to purchase or lease Class Vehicles. Plaintiff and the other Class members justifiably relied on Defendant's omissions to their detriment. This detriment is evident from Plaintiff's and Class members' purchase or lease of the defective Class Vehicles. As a direct and proximate result of Defendant's misconduct, Plaintiff and Class members have suffered and will continue to suffer actual damages.

### COUNT VII
### Unjust Enrichment
### (On Behalf of Plaintiff and the Classes)

69. Plaintiff re-allege and incorporate by reference the preceding paragraphs as if fully set forth herein.

70. This claim is brought by Plaintiff on behalf of the Nationwide Class and the New York Class.

71. This claim is pleaded in the alternative to the other claims pleaded herein.

72. As described herein, Defendant marketed, distributed, and sold the Class Vehicles, as equipped with internet-enabled safety and other features, without disclosing the truth about the inevitable and foreseeable termination of their operability, namely that the Class Vehicles had telematics equipment that would be "bricked" and rendered useless upon the sunsetting of 3G infrastructure.

73. As a direct and proximate result of Defendant's omissions concerning the obsolete telematics equipment and refusal to upgrade such equipment, Defendant has profited and benefited from the sale and lease of the Class Vehicles. Although these Vehicles are purchased through Defendant's agents, the money from the Vehicle sales flows directly back to Defendant.

74. Plaintiff and Class members thus conferred a benefit upon, and thereby enriched, Defendant in exchange for Class Vehicles that are defective and prematurely fail.

75. Defendant has voluntarily accepted and retained these profits and benefits, with full knowledge and awareness that, as a result of Defendant's misconduct, Plaintiff and the Class members were not receiving products of the quality, nature, fitness, or value that had been represented by Defendant, and that reasonable consumers expected.

76. As a result of Defendant's unjust enrichment, Plaintiff and the Class members have suffered damages.

77. Defendant has been unjustly enriched by their fraudulent and deceptive withholding of benefits to Plaintiff and the Class, at the expense of these parties. Defendant has been unjustly enriched in the amount of the difference in the price of the Class Vehicles with functioning models and internet enabled safety features and the price of the Class Vehicles with the disconnected 3G network.

78. Equity and good conscience militate against allowing Defendant to retain its ill-gotten gains and require disgorgement and restitution of the same.

79. Plaintiff and class members are entitled to restitution of the profits unjustly obtained by Defendant, with interest

## **REQUEST FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, respectfully requests that the Court enter judgment in his favor and against Defendant as follows:

A. Certifying the Class under Federal Rule of Civil Procedure 23 as requested herein;

B. Appointing Plaintiff as Class Representative and undersigned counsel as Class Counsel;

C. Finding that Nissan engaged in the unlawful conduct as alleged herein;

D. Awarding Plaintiff and the other Class members actual, compensatory, and consequential damages;

E. Awarding Plaintiff and the other Class members statutory damages;

F. Awarding Plaintiff and the other Class members declaratory and injunctive relief;

G. Awarding Plaintiff and the other Class members restitution and disgorgement;

H. Awarding Plaintiff and the other Class members exemplary damages, should the finder of fact determine that Nissan acted with malice or oppression;

I. Awarding Plaintiff and the other Class members pre-judgment and post-judgment interest on all amounts awarded;

J. Awarding Plaintiff and the other Class members reasonable attorneys' fees, costs, and expenses; and

K. Granting such other relief as the Court deems just and appropriate.

# JURY TRIAL DEMAND

Plaintiff, individually and on behalf of all others similarly situated, hereby requests a jury trial, pursuant to Federal Rule of Civil Procedure 38, on all claims so triable.

Dated: November 16, 2022

Respectfully submitted,

*/s/ Kevin H. Sharp*
KEVIN H. SHARP
ksharp@sanfordheisler.com
**SANFORD HEISLER SHARP, LLP**
611 Commerce Street, Suite 3100
Nashville, TN 37203
Telephone: (615) 434-7000
Facsimile: (615) 434-7020

ROBERT R. AHDOOT*
rahdoot@ahdootwolfson.com
CHRISTOPHER STINER*
cstiner@ahdootwolfson.com
**AHDOOT & WOLFSON, PC**
2600 W. Olive Avenue, Suite 500
Burbank, California 91505-4521
Telephone: (310) 474-9111
Facsimile: (310) 474-8585

ANDREW FERICH*
aferich@ahdootwolfson.com
**AHDOOT & WOLFSON, PC**
201 King of Prussia Road, Suite 650
Radnor, Pennsylvania 19087
Telephone: (310) 474-9111
Facsimile: (310) 474-8585

* *Pro Hac Vice* applications to be filed

*Attorneys for Plaintiff and the Putative Classes*